Robert BOMBA and Annamarie P. Bomba, Plaintiffs-Appellants,

v.

W. L. BELVIDERE, INC., a general partner doing business as Candlewick Lakes Associates, a partnership, Defendant-Appellee.

No. 78–1045.

United States Court of Appeals, Seventh Circuit.

Argued April 28, 1978.

Decided July 21, 1978.

Rehearing Denied Aug. 29, 1978.

James J. Conlon, Chicago, Ill., for plaintiffs-appellants.

Robert J. Oliver, Rockford, Ill., for defendant-appellee.

Before FAIRCHILD, Chief Judge, MARKEY, Chief Judge, United States Court of Customs and Patent Appeals,* and BAUER, Circuit Judge.

BAUER, Circuit Judge.

Plaintiffs bring this appeal from the district court's grant of defendant's motion for summary judgment in a civil action brought under the Interstate Land Sales Full Disclosure Act, 15 U.S.C. §§ 1701–17. Plaintiffs contend that the defendant developer violated 15 U.S.C. § 1703(a)(1) by selling them two lots without having filed a statement

---

* The Hon. Howard T. Markey, Chief Judge of the United States Court of Customs and Patent Appeals is sitting by designation.

of record in accordance with 15 U.S.C. § 1706 and without having provided plaintiffs with a printed property report as required by 15 U.S.C. § 1707. The defendant answered, *inter alia*, that plaintiffs' action was barred by the statute of limitations specified in 15 U.S.C. § 1711. Plaintiffs then replied that the defendant was estopped by its conduct from relying on the statute of limitations. The district court disagreed, granted defendant's motion for summary judgment on the ground of the statute of limitations, and dismissed plaintiffs' cause of action. We reverse and remand the case for further proceedings.

## I.

Plaintiffs' complaint alleges that the defendant sold them two lots of land on August 4, 1973 without having effective statements of record and without providing plaintiffs with property reports for each lot as required by the Interstate Land Sales Full Disclosure Act, 15 U.S.C. § 1703(a)(1). On May 30, 1975, the defendant sent a letter to plaintiffs acknowledging that it had violated the Act, at least with respect to one lot, and informing plaintiffs that they could, if they wished, rescind the sale and receive a refund of any payments made in accordance with the sales contract. Plaintiffs immediately notified defendant that they elected to rescind and wished a refund of their payments. Their letter concluded:

> "We expect you to contact us soon with the proper documents to be executed in order to reconvey said lot . . . ."

When the defendant did not promptly reply to the letter, plaintiffs telephoned the defendant on several occasions for the purpose of determining when their refund would be forthcoming. According to Annamarie Bomba's deposition, plaintiffs were told in July of 1975 that they would get their money back but that it would take time. This same assurance was made in subsequent phone calls throughout the course of 1975. Finally, in March of 1976, defendant's attorney wrote the Bombas a letter that indicated the defendant, in response to plaintiffs' request for rescission and a refund, would attempt to sell their lot and turn over the "net proceeds of sale" after deduction of various sales costs and commissions. Under the proposed agreement, the Bombas would release defendant from any and all claims in the event their lot was sold, even if the net proceeds of sale did not equal the amount of monies paid by plaintiffs pursuant to the sales agreement with defendant. The Bombas then consulted an attorney, who brought the present suit on May 28, 1977.

## II.

On appeal, the plaintiffs contend that the defendant is estopped by its conduct from relying on the statute of limitations contained in 15 U.S.C. § 1711. According to plaintiffs, by promising them a refund of their money, the defendant lulled them into a false sense of security that led them to refrain from bringing a timely suit. Thus, say plaintiffs, the defendant is estopped from relying on the statute of limitations defense under the principles set out in *Glus v. Brooklyn Eastern Dist. Terminal*, 359 U.S. 231, 79 S.Ct. 760, 3 L.Ed.2d 770 (1959).

Defendant responds that the explicit language of 15 U.S.C. § 1711 supports the district court's ruling that the statute of limitations contained therein constitutes an absolute bar to plaintiffs' cause of action, for the statute says in no uncertain terms that

> "In no event shall any [action to enforce a liability created by this Act] be brought by a purchaser more than three years after the sale or lease to such purchaser."

## III.

In ruling that defendant was entitled to judgment as a matter of law because of the applicable statute of limitations, the district court took the view that the explicit language of 15 U.S.C. § 1711 foreclosed application of the doctrine of equitable estoppel in suits brought under the Interstate Land Sales Full Disclosure Act more than three years after the allegedly illegal sale. In

essence, the district court ruled that the "In no event" wording of 15 U.S.C. § 1711 placed an absolute bar on the initiation of suit more than three years after the relevant sale, a limitations period that was not subject to equitable tolling.

■■■ Though we might well agree with the district court that the unequivocal language of 15 U.S.C. § 1711 presents an insurmountable barrier to the *tolling* of the three-year limitations period contained therein, we cannot agree that the "In no event" terms in which the three-year limitations period is expressed forecloses possible application of the separate and distinct doctrine of equitable estoppel. Tolling, strictly speaking, is concerned with the point at which the limitations period begins to run and with the circumstances in which the running of the limitations period may be suspended. These are matters in large measure governed by the language of the statute of limitations itself, and thus it is not surprising that several district courts have held that the three-year limitations period of 15 U.S.C. § 1711 is not subject to being tolled. E. g., *Timmreck v. Munn*, 433 F.Supp. 396 (N.D.Ill.1977); *Husted v. AMREP Corp.*, 429 F.Supp. 298 (S.D.N.Y.1977); *Hester v. Hidden Valley Lakes, Inc.*, 404 F.Supp. 580 (N.D.Miss.1975). Equitable estoppel, however, is a different matter. It is not concerned with the running and suspension of the limitations period, but rather comes into play only after the limitations period has run and addresses itself to the circumstances in which a party will be estopped from asserting the statute of limitations as a defense to an admittedly untimely action because his conduct has induced another into forbearing suit within the applicable limitations period. Its application is wholly independent of the limitations period itself and takes its life, not from the language of the statute, but from the equitable principle that no man will be permitted to profit from his own wrongdoing in a court of justice. Thus, because equitable estoppel operates directly on the defendant without abrogating the running of the limitations period as provided by statute, it might apply no matter how unequivocally the applicable limitations period is expressed.

*Glus v. Brooklyn Eastern District Terminal*, 359 U.S. 231, 79 S.Ct. 760, 3 L.Ed.2d 770 (1959), is instructive in this regard. In that case, the Supreme Court was confronted with a federal statute of limitations that was just as unequivocal as the one before us now. Yet, notwithstanding the fact that the Federal Employers' Liability Act provided that

> "No action shall be maintained under this chapter unless commenced within three years from the day the cause of action accrued,"

the Court held that the doctrine of equitable estoppel applied in suits brought under the statute. In so holding, the Court reasoned that the principle that no man may take advantage of his own wrongdoing was so deeply rooted in and integral to our jurisprudence that it should be implied in the interstices of every federal cause of action absent some affirmative indication that Congress expressly intended to exclude the application of equitable estoppel. *Id.* at 232–34, 79 S.Ct. 760. The Court found no such intent in even the unequivocal language of the statute, and in this respect *Glus* is controlling here.

■ In light of *Glus*, we hold that the "In no event" language of 15 U.S.C. § 1711 does not by its own terms bar the possible application of the doctrine of equitable estoppel to suits brought under the Interstate Land Sales Full Disclosure Act more than three years after the alleged sale.

Having held that the doctrine of equitable estoppel may apply in suits brought under the Interstate Land Sales Full Disclosure Act notwithstanding the terms of 15 U.S.C. § 1711, we turn to the question of whether plaintiffs have alleged sufficient facts to possibly warrant the doctrine's application in the particular circumstances of this case for, on a motion for summary judgment, "the burden is on the plaintiff to present facts . . . which, if true, would require a court as a matter of law to estop the defendant from asserting the

statute of limitations." *Burke v. Gateway,* 441 F.2d 946, 948–49 (3d Cir. 1971). We believe the plaintiffs have met their burden.

 In their depositions properly before the district court on defendant's motion for summary judgment, plaintiffs have stated that the defendant's promise to pay them a refund led them to defer seeking legal counsel and bringing suit on their claim. Though it is widely held that mere negotiations concerning a disputed claim, without more, is insufficient to warrant the application of equitable estoppel, *Melhorn v. AMREP Corp.,* 373 F.Supp. 1378, 1381 (M.D. Pa.1974), the cases are legion that a promise to pay a claim will estop a defendant from asserting the applicable statute of limitations if the plaintiff relied in good faith on defendant's promise in forbearing suit. E. g., *United States v. Reliance Ins. Co.,* 436 F.2d 1366, 1370 (10th Cir. 1971); *United States v. Fidelity & Cas. Co.,* 402 F.2d 893, 897 (4th Cir. 1968); *Demmert v. City of Klawock,* 199 F.2d 32, 34, 14 Alaska 20 (9th Cir. 1952); *United States v. Continental Cas. Co.,* 357 F.Supp. 795, 800 (E.D.La.1973). The oft-quoted rule applicable in such a situation is:

> "Estoppel arises where one, by his conduct, lulls another into a false security, and into a position he would not take only because of such conduct. Estoppel, in the event of a disputed claim, arises where one party by words, acts, and conduct led the other to believe that it would acknowledge and pay the claim, if, after investigation, the claim were found to be just, but when, after the time for suit had passed, breaks off negotiations and denies liability and refuses to pay." *Bartlett v. United States,* 272 F.2d 291, 296 (10th Cir. 1959).

Moreover, it is not necessary that the defendant intentionally mislead or deceive the plaintiff, or even intend by its conduct to induce delay. *United States v. Fidelity & Cas. Co.,* 402 F.2d 893, 898 (4th Cir. 1968); *Melhorn v. AMREP Corp.,* 373 F.Supp. 1378, 1381 (M.D.Pa.1974). Rather, all that is necessary for invocation of the doctrine of eq-

uitable estoppel is that the plaintiff reasonably rely on the defendant's conduct or representations in forbearing suit. *Id.*

 Accordingly, as we believe that the materials properly before the district court raise a material issue of fact as to whether plaintiffs did in fact reasonably rely on defendant's promise of a refund in forbearing suit within the applicable limitations period, we reverse the district court's judgment and remand the case for further proceeding consistent with this opinion.

**REVERSED AND REMANDED.**