Larry ZAPP, et al., Appellants,

v.

UNITED TRANSPORTATION UNION, Appellees.

No. 88–2541.

United States Court of Appeals, Seventh Circuit.

Argued March 31, 1989.

Decided July 7, 1989.

Rehearing Denied July 26, 1989.

James H. Hanson, Lynne D. Lidke, Scopelitis, Garvin & Wickes, Robert F. Gammon, Dean E. Richards, Andrew K. Light, Scopelitis, Garvin & Wickes, Indianapolis, Ind., for Larry Zapp & Wally Cravens.

James H. Hanson, Lynne D. Lidke, Robert F. Gammon, Andrew K. Light, Indianapolis, Ind., for Jeff Bell.

Wayne O. Adams, III, David J. Carr, Bingham, Summers, Welsh & Spilman, Indianapolis, Ind., for United Transp. Union.

Before CUMMINGS, POSNER and FLAUM, Circuit Judges.

FLAUM, Circuit Judge.

This case comes before us for the second time. *See Zapp v. United Transportation Union*, 727 F.2d 617 (7th Cir.1984). Plaintiffs, 145 former employees of the Indianapolis Union Railway Company (IU), appeal from the district court's entry of summary judgment in favor of defendant United Transportation Union (UTU). For the reasons discussed below, we affirm.

## I.

On February 1, 1968, the Pennsylvania Railroad, of which the IU was a wholly-owned though independently operated subsidiary, merged with the New York Central Transportation Company thereby creating an entity known as the Penn Central Transportation Company. Prior to the effectuation of the merger, negotiations designed to protect the seniority rights of affected employees took place. Those negotiations ultimately produced an agreement that granted most employees a February 1, 1968 seniority date on Penn–Central track. Due to its independent status, IU employees were not a party to this agreement. Consequently, these employees, while retaining their original date of hire seniority on track within IU territory, did not receive any seniority date on other Penn–Central track, a fact that was alleged to have produced inequitable results. Shortly after the merger was effected, the IU employees retained the UTU as their exclusive bargaining representative.

During the mid–1970's Congress created Conrail, a corporation formed to acquire the assets of several bankrupt railroads including the Penn–Central. On December 18, 1975, a collective bargaining agreement was signed that defined the seniority rights of employees affected by the pending Conrail acquisitions. Essentially, the agreement preserved the seniority status quo for employees throughout the territory of the acquired railroad while granting them a seniority date on other Conrail track commensurate with the date of acquisition of their former employer. For IU employees, the agreement meant that they retained their date of hire seniority on former IU track while obtaining an April 1, 1976 seniority date on all other Conrail track including track within the territory of the defunct Penn–Central Transportation Company. Plaintiffs' representatives received copies of the collective bargaining agreement sometime before September 1, 1976.

On January 24, 1977, seniority rosters detailing the status of former IU employees were posted. Shortly thereafter, plaintiffs' representatives complained to the UTU about the inequitable result produced by the December 18, 1975 collective bargaining agreement. The UTU's response, however, failed to mollify the former IU employees. As a result, on July 12, 1977, plaintiffs filed this suit in the district court alleging that the UTU breached its duty of fair representation by entering into an unsatisfactory collective bargaining agreement. Specifically, the plaintiffs decried the fact that the UTU had failed to obtain a February 1, 1968 seniority date on former Penn–Central track for them. The complaint was amended four times over an eleven year period before the district court entered summary judgment in favor of the defendants. The district court, in a com-

prehensive and well-reasoned opinion, held that plaintiffs' suit was not filed within the applicable limitations period, *i.e.* six months after the signing of the collective bargaining agreement, *see United Independent Flight Officers, Inc. v. United Air Lines*, 756 F.2d 1262, 1273 (7th Cir.1985) and rejected various arguments supporting a tolling of the limitations period. Plaintiffs now appeal from the district court's decision.

## II.

The problem presented by this case is determining when plaintiffs' claims accrued. In *Ranieri v. United Transportation Union*, 743 F.2d 598, 599 (7th Cir. 1984), this court held that a suit by an employee alleging a breach of the duty of fair representation is governed by the six month statute of limitations held applicable to "hybrid" fair representation/employer suits by the Supreme Court in *Del–Costello v. International Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed. 2d 476 (1983).[1] Subsequently, in *United Independent Flight Officers, Inc. v. United Air Lines*, 756 F.2d 1262, 1273 (7th Cir.1985), we enunciated the general principle applicable to this case that causes of action based on entry into collective bargaining agreements accrue when the agreement is signed. In *Clift v. UAW*, 818 F.2d 623, 629 (7th Cir.1987) (per curiam), we recognized a narrow discovery exception to this principle holding that the six-month statute of limitations period does not begin to run until the aggrieved party discovers or with the exercise of reasonable diligence could have discovered the existence of the contract. We emphasized, however, that the plaintiff has the burden of proving that he or she falls within this exception. *Id.* Moreover, we stated that in cases involving multiple plaintiffs which have not been certified as class actions (such as the present case), each individual plaintiff must adduce evidence demonstrating that he or she fit within the discovery exception. *Id.* at 630.

In the present case, each individual plaintiff was required to adduce evidence demonstrating that he or she had not discovered the existence of the collective bargaining agreement prior to January 12, 1977 and could not have done so through the exercise of reasonable diligence in order to come within the discovery exception to the time-bar rules. In our view, none of the plaintiffs has satisfied this exacting standard. The record contains three items of evidence relevant to the discovery exception. The first item is a stipulation of fact entered into by most of the plaintiffs. This stipulation stated that the plaintiffs had no idea when they first became aware of the collective bargaining agreement. Obviously, a statement of this nature does not provide this court with evidence that these plaintiffs did not know of the existence of the collective bargaining agreement prior to January 12, 1977.

The second item of evidence in the record is an affidavit submitted by Russell Overstreet, one of plaintiffs' representatives. In his affidavit, Overstreet stated that he received a copy of the collective bargaining agreement in the middle or latter part of 1976. (The district court found no later than September 1, 1976). Obviously, this is more than six months prior to July 12, 1977.

The final item of evidence is an affidavit submitted by one Charles Baker. In his affidavit Mr. Baker stated that he did not learn of the existence of the collective bargaining agreement until the early part of 1977. Again, however, this submission is not sufficient to avoid summary judgment on the discovery exception issue. "The early part of 1977" could be a date in January prior to January 12—the precise date is crucial—and as we emphasized above plaintiff bore the burden of proving that he came within the discovery exception. Moreover, even if we were to interpret this statement as alleging that Mr. Baker did not actually know of the existence of the agreement until the posting of

1. Although this action was commenced approximately six years before *Del–Costello* was decided, we have held that that decision applies retro-

actively. *See Landahl v. PPG Industries, Inc.*, 746 F.2d 1312 (7th Cir.1984).

the seniority rosters until January 24, 1977, we would still conclude that Baker as well as all other plaintiffs have failed to show that they could not have reasonably discovered its existence much earlier. Baker's affidavit states that in the fall of 1976 rumors that the UTU was not adequately representing the interests of IU employees were rampant on the IU track. In view of these rumors, we fail to see why a diligent employee who was concerned about his seniority status under Conrail would not have asked his representatives, who were in possession of the collective bargaining agreement at the time, about the matter.

In sum, we find that no plaintiff has adduced specific facts demonstrating that he or she had not discovered the existence of the collective bargaining agreement prior to January 12, 1977 and could not have done so through the exercise of reasonable diligence. Consequently, we affirm the district court's entry of summary judgment in favor of the UTU.[2]

AFFIRMED.

[2.] Plaintiffs also raise several other arguments on appeal, none of which have merit. First, plaintiffs contend that the statute of limitations was tolled due to the UTU's fraudulent concealment of the existence of the collective bargaining agreement. See Bonds v. Coca–Cola, 806 F.2d 1324 (7th Cir.1986). This argument, however, strains credulity in view of the fact that the UTU had sent copies of the collective bargaining agreement to plaintiffs' representatives by September 1, 1976.

Second, plaintiffs claim that the limitations period was tolled while the plaintiffs exhausted their intra-union remedies. See Frandsen v. Brotherhood of Railway, Airline and Steamship Clerks, 782 F.2d 674 (7th Cir.1986). As the district court correctly pointed out, however, the plaintiffs clearly did not exhaust their intra-union remedies in this case.

Finally, plaintiffs argue that defendants should be estopped from asserting the statute of limitations as a defense. In Bomba v. Belvidere, Inc., 579 F.2d 1067, 1070 (7th Cir.1978), we held that a party who has induced another into forebearing suit within the applicable limitations period will be estopped from arguing the statute of limitations. We emphasized, however, that on a motion for summary judgment, the burden is on the plaintiff to present facts ... which if true would require a court as a matter of law to estop the defendant from asserting the statute of limitations. Id. at 1070–71 (quoting Burke v. Gateway, 441 F.2d 946, 948–49 (3d Cir.1971)). The record in this case is devoid of any such facts.