**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 23-1806**

---

XUNHUI CHENG, on behalf of himself and all others similarly situated; KELIN CAI, on behalf of himself and all others similarly situated,

Plaintiffs – Appellants,

v.

DAN LIU; FOUNDERS GROUP INTERNATIONAL, LLC; FOUNDERS NATIONAL GOLF, LLC; FOUNDERS ABERDEEN, LLC; FOUNDERS DEVELOPMENT, LLC; FOUNDERS BRGC, LLC; FOUNDERS GCC, LLC; FOUNDERS GOLF MANAGEMENT, LLC; FOUNDERS IWGC, LLC; FOUNDERS RHGC, LLC; FOUNDERS TRADITION, LLC; FOUNDERS WILD WING, LLC; ATLANTIC DEVELOPMENT COMPANY, LLC; ATLANTIC COAST FUNDING, LLC; WILD WING LAND AND DEVELOPMENT, LLC; OFFSHORE CAPTAIN, LLC; D&C INTERNATIONAL HOLDINGS, LLC; FOUNDERS BLUEWATER, LLC; FOUNDERS EVENTS, LLC,

Defendants – Appellees.

---

Appeal from the United States District Court for the District of South Carolina, at Florence. Joseph Dawson, III, District Judge. (4:20-cv-01726-JD)

---

Argued: May 7, 2024                                          Decided: July 29, 2024

---

Before RICHARDSON, Circuit Judge, KEENAN, Senior Circuit Judge, and Elizabeth K. DILLON, Chief United States District Judge for the Western District of Virginia, sitting by designation.

---

Affirmed and remanded by unpublished opinion. Chief Judge Dillon wrote the opinion, in

which Judges Richardson and Keenan joined.

---

**ARGUED:**   Gene McCain Connell, Jr., KELAHER, CONNELL & CONNOR, PC, Surfside Beach, South Carolina; Anthony Scordo, III, LAW OFFICES OF ANTHONY SCORDO, PC, Cedar Grove, New Jersey, for Appellants. B. Rush Smith III, NELSON MULLINS RILEY & SCARBOROUGH LLP, Columbia, South Carolina, for Appellees. **ON BRIEF:**   Reese R. Boyd, III, DAVIS & BOYD, LLC, Myrtle Beach, South Carolina, for Appellants. Susan P. MacDonald, NELSON MULLINS RILEY & SCARBOROUGH LLP, Myrtle Beach, South Carolina, for Entity Appellees. Thomas E. Lydon, MCANGUS, GOUDELOCK & COURIE, LLC, Columbia, South Carolina, for Appellee Dan Liu.

---

Unpublished opinions are not binding precedent in this circuit.

DILLON, Chief District Judge:

In this putative class action, Appellants appeal from the district court's order denying class certification. The district court's decision rested on its conclusion that Appellants failed to satisfy subsections (a) and (b) of Federal Rule of Civil Procedure 23. We conclude that the district court did not abuse its discretion in finding that Appellants failed to satisfy Rule 23(b), and so we affirm and remand for further proceedings on Appellants' individual claims.[1]

## I.

Plaintiffs-Appellants Xunhui Cheng and Kelin Cai are two of about 95,000 individuals who entered into investment contracts in the People's Republic of China ("PRC" or "China") as part of a fraudulent Ponzi scheme.[2] They brought this lawsuit as a putative class action against a number of LLCs (collectively the "Entity Defendants") and Dan Liu.

Liu, along with his co-conspirator, Xiuli Xue, were the primary drivers of this scheme. The scheme occurred almost entirely in the PRC, and the equivalent of several

---

[1] Because a failure to satisfy either Rule 23(a) or Rule 23(b) precludes class certification, we do not reach the parties' arguments related to Rule 23(a). *Cf. Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 319 (4th Cir. 2006) ("Because we base our decision on the district court's alternative holdings that certification was improper under Rules 23(b)(3) and 23(b)(2), we assume, without deciding, that Appellants satisfied Rule 23(a) . . . .").

[2] We utilize the number set forth in news reports referenced in the Amended Complaint but note that different numbers appear elsewhere in the record. The exact number is unimportant.

billion U.S. dollars was taken from the Chinese investors. Appellants allege that the money from the scheme was funneled through other companies and then used, among other things, to purchase approximately two dozen golf courses and other real estate in South Carolina. Those properties, which purportedly were purchased with the monies gained in the fraudulent scheme by Liu and entities he controlled, are now owned by the Entity Defendants.

Xue has since been convicted, in the PRC, of financial fraud and illegal fundraising, and she is serving a 15-year prison sentence imposed in 2019. In connection with those criminal proceedings, the government of the PRC recovered some monies from Xue and her companies and paid at least partial restitution to some of the scheme's victims. Liu left China before the government investigation began, and he has since moved to the United States.[3]

For purposes of our decision, it is not necessary to discuss in any detail either the mechanics of the scheme or the stories of the individual Appellants.[4] Both Appellants invested in Chinese LLCs with the promise of an excellent return on investment, and they lost some or all of the monies they invested.

The complaint contains ten claims, including claims for breach of contract, breach of fiduciary duty, fraud, unjust enrichment, securities violations under both federal and

---

[3] According to Appellants, Liu is wanted on criminal charges in China, but the United States does not have an extradition treaty with the PRC.

[4] One of the experts proffered by Appellants detailed the scheme in significant detail in his expert report.

4

state law, and conversion. Relevant to the court's analysis regarding Rule 23(b)(2), most of the claims expressly seek money damages on behalf of the Chinese investors. In their briefing before this court, however, Appellants focus their attention on two claims seeking other remedies. In the first, titled "Constructive Trust," Appellants request that the court establish a constructive trust to hold the real properties and eventually sell them with "proceeds paid to the Class." In the second, titled "Receivership," Appellants request that the court institute a receivership to "take control of all [the real] properties and manage them for the benefit of [Appellants] and class members."

Appellants asked the district court to certify three proposed classes (a "constructive trust class" and two sub-classes), and each class sought to recover monies obtained from class members that were *not* recovered by the government of the PRC and for which restitution had not been paid. Also, and before the Ponzi scheme collapsed, at least some of the potential class members received returns on their contracts via funds obtained from subsequent investors.

In denying the motion to certify a class, the district court found that Appellants could not establish at least two of the prerequisites to a class action required by Rule 23(a)—commonality and typicality. It further reasoned that Appellants could not satisfy the provisions of Federal Rule of Civil Procedure 23(b).[5] Specifically, it held that certification was improper under both: (1) Rule 23(b)(2), because the predominant relief sought was individualized monetary relief; and (2) Rule 23(b)(3), because proceeding as a class must

---

[5] Appellants did not rely on Rule 23(b)(1) below and do not rely on it on appeal.

5

be "superior to other available methods" of litigation, and Appellants had not made that showing.

Before this court, Appellants challenge the denial of class certification, arguing that the district court erred as to both its Rule 23(a) and Rule 23(b) conclusions.

## II.

## A.

This court recently summarized the relevant standards for class certification:

> As we explained in our 2014 decision in *EQT Production* [v. *Adair*, 764 F.3d 347 (4th Cir. 2014)], "Rule 23(a) requires that the prospective class comply with four prerequisites: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation." *See* 764 F.3d at 357. Additionally, "the class action must fall within one of the three categories enumerated in Rule 23(b)" . . . . *Id.*
>
> . . .
>
> The party seeking class certification must present evidence and demonstrate compliance with Rule 23. *See EQT Prod.*, 764 F.3d at 357–58. Concomitantly, "the district court has an independent obligation to perform a 'rigorous analysis' to ensure that all of the prerequisites have been satisfied." *Id.* at 358 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011)).

*Career Counseling, Inc. v. AmeriFactors Fin. Grp., LLC*, 91 F.4th 202, 206 (4th Cir. 2024) (internal footnote omitted).

As the party seeking certification, Appellants were required to establish each element under Rule 23 by a preponderance of the evidence. *Messner v. Northshore Univ. Healthsystem*, 669 F.3d 802, 811 (7th Cir. 2012). If one of the requirements is not met,

6

certification must be denied. The court must go beyond the pleadings, take a "'close look' at relevant matters," and conduct a "rigorous analysis," although it should not consider whether the proposed class is likely to prevail ultimately on the merits. *See Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 365–66 (4th Cir. 2004) (citations omitted).

Under Rule 23(f), "an order granting or denying class-action certification" is immediately appealable with the permission of the appellate court, which was granted here. This court reviews the decision to deny or grant class certification for abuse of discretion. *Career Counseling, Inc.*, 91 F.4th at 206 (citation omitted). A district court abuses its discretion "when it materially misapplies the requirements of Rule 23," *id.* (quoting *EQT Prod. Co.*, 764 F.3d at 357), or "when its decision rests on an error of law or a clearly erroneous finding of fact." *Id.* (citations omitted). In reviewing a class certification decision, this court must afford "substantial deference" to the district court, especially when it provides "well-supported factual findings." *Ward v. Dixie Nat'l Life Ins. Co.*, 595 F.3d 164, 179 (4th Cir. 2010) (quoting *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 421, 434 (4th Cir. 2003)).[6]

B.

We begin our review of the district court's decision with its analysis of Rule

---

[6] In their briefing, Appellants criticize the district court for not holding an evidentiary hearing and for failing to discuss in more depth some of the record evidence, such as their experts' reports. Appellants acknowledge, however, that the district court was not required to hold a hearing, and they do not argue that the district court was required to discuss all of the evidence submitted. We conclude that the district court's analysis was sufficiently "rigorous" to avoid a reversal for abuse of discretion on this ground. *See Gariety*, 368 F.3d at 367.

7

23(b)(2). A Rule 23(b)(2) class, unlike a (b)(3) class, does not allow a plaintiff to opt out of the class and does not require notice of class certification to absent class members. *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 330 n.25 (4th Cir. 2006). Rule 23(b)(2) allows a class to be certified if Rule 23(a) is satisfied and if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). The Supreme Court has explained that Rule 23(b)(2) "applies only when a single injunction or declaratory judgment would provide relief to each member of the class. . . . [I]t does not authorize class certification when each class member would be entitled to an individualized award of monetary damages." *Dukes*, 564 U.S. at 360–61. Although the Fourth Circuit has held that mandatory Rule 23(b)(2) classes may be certified in some cases even when monetary relief is at issue, certification under (b)(2) is inappropriate "[w]here monetary relief predominates." *Berry v. Schulman*, 807 F.3d 600, 609 (4th Cir. 2015).

Despite Appellants' focus in their briefing on their request for receivership and for a constructive trust, it is noteworthy that seven of the ten claims in the complaint seek actual damages, not equitable or injunctive relief. And even the counts that ask for a constructive trust and receivership seek that relief in order to sell the real property and distribute the proceeds individually to the Appellants. As such, the district court did not err in concluding that "monetary relief predominates." *See id.*

Further, as the district court correctly noted, the calculation of money damages for each class member will not be identical. The investors invested different amounts at

8

different times. Moreover, some of the earlier investors have received payments from later investors consistent with a typical Ponzi scheme—payments which could be subject to disgorgement or repayment[7]—and some of the investors received at least partial restitution from the government of the PRC. So, an individualized determination of damages will be necessary. Certainly, this is not a case where a single injunction could provide relief to the entire class, as required to certify under Rule 23(b).

In similar circumstances, this court and others have found that a Rule 23(b)(2) class was improper. *E.g.*, *Lukenas v. Bryce's Mountain Resort, Inc.*, 538 F.2d 594, 595–96 (4th Cir. 1976) (reasoning that where the claims for equitable relief were "simply . . . a predicate for a monetary judgment," a 23(b)(2) class could not be certified); *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 226 F.R.D. 456, 468 (S.D.N.Y. 2005) (describing the "plaintiffs' request for a constructive trust" as "an ill-disguised claim for damages" and declining to certify a Rule 23(b)(2) class).

For their part, Appellants rely upon *In re Monumental Life Ins. Co.*, 365 F.3d 408 (5th Cir. 2004), which reached a different result. There, the Fifth Circuit reversed the district court's denial of a (b)(2) class where plaintiffs asked the court to impose a constructive trust, even though there would still need to be individualized determinations as to how much each class member was owed. 365 F.3d at 421.

---

[7] *Donell v. Kowell*, 533 F.3d 762, 771–72 (9th Cir. 2008) (noting that an innocent investor in a Ponzi scheme could be liable for the difference between the amount he invested and amount he gained); *Scholes v. Lehmann*, 56 F.3d 750, 757–58 (7th Cir. 1995) (explaining that an investor in Ponzi scheme must "return the net profits of his investment—the difference between what he put in at the beginning and what he had at the end").

Even if that case were binding on this court, it would not change the outcome the court reaches here. The *Monumental Life* Court reasoned that the monetary damages did not predominate, but only because the amount owed—while it differed among individuals based on factors such as how long each had held an insurance policy—could be computed based on a formula that required only referencing the defendant's records.[8] *Id.* at 420. As that court explained, the variables that would lead to a calculation of damages were "identifiable on a classwide basis . . . ; none of these variables is unique to particular plaintiffs." *Id.* at 419. Here, by contrast, the determination of what each plaintiff would be entitled to recover would vary according to a number of factors—how many contracts into which the investor had entered and in what amounts; whether the investor had recovered on any contracts, and if so, how much was received from subsequent investors; and whether the investor received restitution as a result of the Xue criminal case, and if so, how much.

For all of these reasons, we easily conclude that an award of individual money damages—not injunctive relief—is the primary relief sought and that monetary relief predominates. Accordingly, the district court did not abuse its discretion in ruling that Appellants failed to meet their burden to show that certification under Rule 23(b)(2) was proper.

## C.

Turning next to Rule 23(b)(3), that provision allows certification only if two

---

[8] The Fifth Circuit remanded for further proceedings and, on remand, the district court denied class certification again, although on different grounds. *See Thorn*, 445 F.3d at 324–25.

components are satisfied: predominance and superiority. *Thorn*, 445 F.3d at 319. Predominance is satisfied if "questions of law or fact . . . predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). Superiority is satisfied if "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Id.*

To decide whether a class action meets these two requirements, a court should consider the following non-exclusive factors: "(A) class members' interests in individually controlling the prosecution . . . of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun . . . ; (C) the desirability or undesirability of concentrating the litigation in this . . . forum ['desirability']; and (D) the likely difficulties in managing a class action ['manageability']." *Id.*; *see also Thorn*, 445 F.3d at 319.

In concluding that Appellants failed to satisfy Rule 23(b)(3)'s requirements, the district court substantially relied on the difficulties likely to be encountered in trying to prosecute a class action "about events that happened in China to Plaintiffs whose claims are governed by Chinese law and who are receiving restitution from the Chinese government." J.A. 6019. The court observed that "China is the locus of this entire lawsuit, and it would not be desirable or manageable to aggregate the claims in this Court, for many reasons." *Id.*

Among these reasons were the uncontroverted facts that all (or nearly all) the investors were Chinese citizens who invested in Chinese companies with Chinese money, the material evidence was located there, and it was unlikely that the PRC would allow for,

11

or cooperate in, American-type discovery. Indeed, the court noted that the Department of State has warned that taking depositions for use in foreign proceedings is prohibited by Chinese law and "could result in the arrest, detention[,] or deportation of the American attorneys and other participants." J.A. 6020 (citation omitted). The district court further noted that it was "not inclined to seek the permission of the [PRC] as a tool for the manageability of a class action." *Id.* At bottom, the court summarized that "given the strong connection to China and the tenuous connection between Plaintiffs' claims and this jurisdiction, it would be neither desirable nor manageable to aggregate the claims here before this Court." *Id.*

To challenge this ruling, Appellants myopically focus on a few issues, contending that the district court erred in its discussion of those issues. For example, they note that their experts opined that Chinese courts would recognize a United States court's judgment, and they claim that South Carolina law would apply both to the equitable remedy of constructive trust and to the action in its entirety based on various choice-of-law rules.[9] Even if Appellants were correct on these issues, they have not called into question the vast majority of the undisputed facts relied upon by the district court and set forth in the preceding paragraph. Those facts are sufficient, by themselves, to support the district court's conclusion that the proposed class action is not manageable or superior to other litigation methods.

Appellants also attempt to downplay the practical difficulties that were identified

---

[9] Appellees dispute both contentions.

12

by the district court. For example, Appellants represent in their opening brief that they have "counsel in China who have extensive ties to China and can easily obtain [the list of investors] from the Nanjing Court." (Opening Br. 33.)  But the list of investors that Appellants assert they could so easily obtain apparently was not obtained or provided to the court or defendants despite years of time devoted to class-certification-related discovery. Moreover, Appellants largely do not dispute that the "the history of this case," cas referenced by the district court, supported a finding of non-manageability. That history included Appellants' difficulties complying with discovery obligations because needed evidence was in the PRC and could not be obtained through United States-style discovery.

In short, even if Appellants' arguments call into question some of the district court's reasons for finding superiority and manageability lacking, many other valid factors support that conclusion. Based on the district court's valid reasons, its conclusion that a class action in South Carolina was not a superior method of litigation for the Appellants' claims was not clearly erroneous and did not materially misapply Rule 23. Thus, it did not abuse its discretion in determining that Appellants failed to establish the propriety of a Rule 23(b)(3) class.

III.

As set forth above, the district court did not abuse its discretion in declining to certify any class. Thus, we affirm the district court's ruling denying class certification and remand for further proceedings on the individual plaintiffs' claims.

*AFFIRMED AND REMANDED*

13